FILED ___ LODGED
RECEIVED ___ COPY

OCT 17 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ *my* _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Ronald Rene' Baron-St. Laurent Sr.,
Edward Brown, Norris Gray, Dushan
Nickolich, Lonnie Bryant, Patrick Troutman,
Tim Robinson, Gordon Emond, Carl Snodgrass,
Rick Kirkman, Ted Warner, Trinidad Martinez,
Todd Williams', Bo Allen, Rick Pedersen,
Eric Pedersen, Michael Geisler, Courtney
Broadbent, Patrick Fields,
and all other similarly situated Plaintiffs',

        **Plaintiffs,**

vs.

Arizona Department of Human Services,
Arizona Sex Offender Program,
Doug Ducey, Aaron Bowen, Bugby,
Cara Crist, Shanda Payne, Sheridan Miller,
Kevin Galbreath, Bradley Johnson, Pascal Koulemou,
Shawn Anderson, Ernest Sunjo, Michelle Gutiérrez,
and Leon Amouzouvi;
In their individual and official capacities,
        **Defendants,**

**COURT File #_____**

**CV-19-05443-PHX-DJH--JFM**

**ORIGINAL
COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS PURSUANT TO 42
U.S.C. 1983 JURY TRIAL
DEMANDED**

## I.  INTRODUCTION

1.  Plaintiffs state that during involuntary civil confinement as Plaintiffs'[1] in the Arizona Sex Offender Program.[2] Defendants are employees of Department of Health and Human Services[3] have and continue to deprive Plaintiffs' of rights and privileges available to other Plaintiffs' civilly committed to the DHS. Plaintiffs have also been deprived of the standards set by the Arizona Legislators. Plaintiffs' allege that their Federal Civil Rights to Procedural & Substantive Due Process pursuant to the Fourteenth Amendment have been violated through the Fourteenth Amendment of the United States Constitution and Bill or Rights.

2.  The Plaintiffs' cause of action includes the Reconstruction Civil Rights Act of 1871, 42 U.S.C. § 1983, based on violations of their federal constitutional rights. Plaintiffs'' further allege supplementary claims under the Arizona State Constitution, Plaintiffs' Bill of Rights, and Civil Commitment and Treatment Act, Administrative Rules and Internal Agency Policies.

[1]Pursuant to Arizona Statue "Patient" means a person who is admitted to the Arizona Sex Offender Program or subject to a court hold order under section for the purpose of assessment, diagnosis, care, treatment, supervision, or other service provided by the Arizona Sex Offender Program.
[2]Hereinafter referred as "ASOP-ACPTC"
[3]Hereinafter referred as "ADHS"

## II   JURISDICTION & VENUE

3. This is a civil action authorized by 42 U.S.C. § 1983 to address the deprivation, under Color of State Law, of rights secured by the Bill of Rights of the United States. The court has jurisdiction under 28 U.S.C. §§ 1331 & 1343(a) (3).

4. Plaintiffs'' seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202. Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 & 2284 of the United States Code. Plaintiffs' further seek monetary, compensatory and punitive damages.

5. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b) as all Defendants reside and work in this district and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## III   DECLARATORY AND INJUNCTIVE RELIEF

6. This court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy exists regarding the rights, privileges and immunities to which plaintiffs' are entitled. Moreover, pursuant to 28 U.S.C. § 2201, this court has authority to grant injunctive relief and any other necessary and proper relief that is deemed just and proper by the Court.

## IV   PLAINTIFFS

7. Plaintiffs' are all Plaintiffs' and at all times mentioned herein are civilly committed people in the Arizona Sex Offender Program, also known as the ASOP–ACPTC in the State of Arizona in the custody of the Department of Human Services. Plaintiffs are currently confined/hospitalized in the ASOP–ACPTC in ASH – ACPTC, Phoenix, Arizona, 85008.

## V   DEFENDANTS

Defendants are as follows:

8. The DHS is the agency responsible for overseeing the running of the State Hospital and protecting of Plaintiffs' rights.  DHS is also responsible for policies and practices implemented through its various agencies.

   A. Doug Ducey is the Governor of Arizona and together with Cara Crist oversees the policies, procedures, and practices at ASOP-ACPTC.  As head of the State of Arizona Duceys' duties include the financing of ASOP-ACPTC and the protection and treatment of Plaintiffs' who are being involuntary held pursuant to indeterminate commitment as an SVP.  Ducey has ordered Crist to confine Plaintiffs' at ASOP-ACPTC in the highest confinement possible even though all plaintiffs' and similar situated Plaintiffs' are and have been in the Less Restrictive Alternative program and all movement and activities is controlled movement and plaintiffs' are to escorted by staff at all times.  Ducey cut funding in 2009 during the recession from the ASOP-ACPTC programing and has never returned the funding even though the Arizona Economy is strong; the monies received are inadequate and staff retention is poor. Governor Doug Ducey performs his duties at the Arizona State Capital, in Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

   B. Cara Crist is the Director of the Arizona Department of Human Services (DHS) and together with other DHS officials and assistants oversees the policies, procedures, and practices at ASOP-ACPTC.  As head of the DHS, Director Crist duties include adequate funding and the protection and treatment of Plaintiffs' who are being involuntary held pursuant to indeterminate commitment as SVP.   The Arizona Department of Human Services, a subdivision of the government of the State of Arizona is located at 150 North 18th Avenue, Suite 210, Phoenix, AZ 85007. DHS through its Subdivision, Arizona State operated Services, is the Agency responsible for the operations of Arizona Sex Offender Program.  She performs her duties in Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

   C. Aaron Bowen is the Chief Executive Officer of the Arizona State Hospital and ASOP-ACPTC is located on the Hospital grounds.

   D. Bugby? Is the Chief of Security of the Arizona State Hospital Grounds and A.S.O.P. Upon information and belief, he is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. She performs her duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

- 3 -

E.  Shanda Payne is the Director of the ASOP-ACPTC located in the ACPTC facility. Upon information and belief, she is responsible for and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. She performs her duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

F.  Sheridan Miller is the Clinical Director of the ASOP-ACPTC located in the ACPTC facility. Upon information and belief, she is responsible for and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. She performs her duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

G.  Kevin Galbreath is a current Program Manager of the ASOP-ACPTC located in the ACPTC facility. Upon information and belief, he is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. He performs his duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

H.  Shawn Anderson is a current Program Manager of the ASOP-ACPTC located in the ACPTC facility. Upon information and belief, he is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. He performs his duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

I.  Pascal Koulemou is a current Program manager of the ASOP-ACPTC located in the ACPTC facility. Upon information and belief, he is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. He performs his duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

J.  Ernest Sunjo is a current Program manager of the ASOP-ACPTC located in the ACPTC facility. Upon information and belief, he is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'. He performs his duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

- 4 -

K.  Leon Amouzouvi is an employee of DHS.ASOP–ACPTC located in the ACPTC facility and has been responsible for violating Plaintiffs' rights in connection with incidents described in this complaint. Upon information and belief, he is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'.   He performs his duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

L.  Defendants John Doe and Jane Doe, whose true name are unknown, are employees of DHS.ASOP–ACPTC located in the ACPTC facility, who have been responsible for violating Plaintiffs' rights in connection with incidents described in this complaint.

M.  Michelle Gutierrez is the Surveillance Supervisor for the surveillance team who monitor Plaintiffs' when they are doing community activities even while being escorted by program staff.   Upon information and belief, she is responsible and has been directly involved in the violations of Plaintiffs' Constitutional and Statutory Rights'.   She performs her duties at ACPTC, Phoenix, Maricopa County, Arizona, and upon information and belief has taken actions relevant to this lawsuit in that location.

N.  All individual Defendants named above are being sued in both their personal and official capacities.  At all times relevant hereto, all individual Defendants were acting under color of State Law and working within a State run facility.

9.  Arizona Statute § 13 – 4601 through § 13 – 4613, promulgate the Arizona Sex Offender Program, and Arizona Rules § 36 – 3701 provide sex offender treatment to people committed as a Sexual Violent Person.

10. Since 1998 The Arizona Legislature amended the statue and The State of Arizona started and has committed people as Sexually Violent Offenders into their ASOP–ACPTC program.   The Arizona, Minnesota, and United States Supreme Courts held that the commitment statutes protected Procedural Due Process, and Equal Protection.

11. The Legislature and Governor Ducey have amended the statutes relating to the commitments of SVP almost on a yearly basis. Cara Crist, Aaron Bowen, Shanda Payne, and Sheridan Miller have drastically changed the policies relating to the treatment, rights, conditions, since they became the governing body of the State Hospital Complex and ACPTC in general.   Conditions under Payne have worsened to a point that the Civil and Forensic units have modernized Plaintiffs' access to the vast array of electronic communication.   Payne has refused to allow us access to any modern day technology and has made it very hard for Plaintiffs' to learn and grasp the concept of the internet, smart phones, etc. and other related changes that have led to diminished Procedural Due Process Protections, and significant changes in how the ASOP–ACPTC operates and keeping Plaintiffs' in the stone age of technology.

12. In 1998, when the ASOP–ACPTC was first built and operated, it was under the Arizona Department of Corrections and Plaintiffs' committed at the time had to file a civil litigation which resulted in a judgment against ASOP–ACPTC.  In 2010 the ASOP–ACPTC resorted back to a DOC run facility and has been that way to this very day.

13. ASOP–ACPTC held barbeques and special events for Plaintiffs', gave gift cards at Christmas, gave a choice of a present, handed out treats during holidays, and had movie nights with popcorn and pop but, when Defendant Ducey cut funding these activities went away and have never been reinstated.

14. Plaintiffs' were allowed to purchase game systems such as Playstation 2 systems; word processors, unlimited size television, computers & computer related products, prior to 2011 & were able to purchase products through different vendors.

15. Plaintiffs' were allowed to shop at local stores, cook food on stoves and barbeques, run their own business, had meaningful jobs, and were able to sell, trade, and buy with other Plaintiffs' with approval of their treatment team.

16. Plaintiffs' were not restricted in forms of self-expression.

17. Plaintiffs' had visits with family and friends.  They were allowed to prepare food, or order food delivered to eat with family and friends.  Vending machines were available on visits.  Visitors could drop off gifts and groceries on their visits' for Plaintiffs'. Plaintiffs' could hold hands or place an arm around a loved one; Hours were not restricted to 2 hours a day.  Visitation was held in a large room, now visits are held in small attorney rooms and are restrictive.

18. Plaintiffs' could make and receive phone that were unmonitored and were able to dial out on their own. Now Plaintiffs' have to get permission before they are allowed to call anyone including attorneys, courts, and police departments, and must have a staff member make the call for Plaintiffs'.  Incoming and outgoing mail are delayed from delivery and plaintiffs have had legal mail delayed up to almost a week before receiving it which, places an undue burden if there is a deadline that Plaintiffs' must meet; court documents have been rejected going to and from the courts and attorneys for just a letter difference in the spelling of Plaintiffs' names.

19. Plaintiffs' are subjected to strip searches.  Plaintiffs' are subjected to intrusive pat downs every time they enter the area where the search room is at whether coming or going even when program staff has been with the patient the whole time he was out of his building.

20. At one time, Plaintiffs' could move freely on the compound.  Plaintiffs' could socialize freely with other Plaintiffs' within the ASOP-ACPTC facility.

21. Plaintiffs' received adequate medical notification on the progress that was being made on their medical issue; this is no longer true. Now Plaintiffs' are kept in the dark and treatment is slow, especially surgeries.

# PRESENTLY

22. After the numerous amendments and policy changes from 2010 to present, the administration of the ASOP–ACPTC were replaced with Defendant Dr. Bowen and Defendant Payne a social worker, because previous administrators were terminated due to illegal and corruptive acts they permitted to happen on their watch. As a result, the policies and procedures of the ASOP–ACPTC drastically changed and I currently like and ran as a Maximum Security facility, instead of a treatment facility.

23. The ASOP–ACPTC treatment center is now modeled after a modern day maximum security penitentiary, with narrow prison windows in the doors and Plaintiffs' rooms. The ASOP–ACPTC treatment center is not accredited by the "Joint Commission on Accreditation of Health Care Organization." Whereas nearly all other treatment facilities in the State of Arizona are accredited. The ASOP–ACPTC treatment facility is surrounded by triple–razor wire, fences' and a 10 foot perimeter wall, and has roving patrols.

24. Plaintiffs' are subjected to unwarranted pat searches of the body, to include the groin area, and sticking their hands inside our clothing and making contact with our privates without reasonable suspicion being established. Searches are conducted in areas that never had need for searches. Plaintiffs' must be pat searched whenever entering or leaving the attorney rooms area which leads out the front lobby of the ASOP–ACPTC Cholla Control building.

25. Plaintiffs' visiting is limited.  There is a pre-approved visiting list that requires a Plaintiffs'' visitor to go through a criminal background check.   The Visitors' contact is limited to one hug at the beginning and end of a visit.  This is exactly what the ADOC does.  Forcing visitors to comply with such conditions, such as being pat searched, to other invasions of personal privacy.   This works to discourage visitors from coming back and further isolates Plaintiffs' from outside contact.

26. Plaintiffs' are continually harassed over property levels and the property in their single man rooms. ASOP-ACPTC, without probable cause, searches rooms, and removes, without due process, what the ASOP-ACPTC no longer wants the Plaintiffs' to have (now considered contraband) in their rooms.  Rooms contain a prison type bed and mattress and a dresser of 5 drawers, and a small 2' x 6" shelf. Plaintiffs' have to buy plastic shelves to store the rest of their property.  Plaintiffs' are given a hard time over having boxes in their rooms to store legal and treatment documents.  Rooms are approximately 9' x 9' square [with door opening into the room] and with a height of about 15'.

27. Plaintiffs' are forced to comply with controlled movement.   The facility has implemented a controlled movement policy and procedure which includes being escorted by staff everywhere we go. There was a time when ACPTC was open and plaintiffs' could move around freely within the boundaries of their building.

28. Plaintiffs' are counted every thirty minutes regardless of the time of day.  During the sleep hours Plaintiffs' are awoken by the noise of staffs keys or radios; flashlights contact with door or window surfaces, and light are shined inside the room every thirty minutes.  Some Plaintiffs' suffer from sleep deprivation.

29. Plaintiffs' at levels one & two cannot buy food from outside vendors: when ordering it must be from Walkenhurst whose products are geared toward prisons.

30. When the State of Arizona civilly commits a person involuntary, it restricts Plaintiffs' liberty against their will, the Constitution imposes upon them; a corresponding duty to insure safety and general well-being. When the State acts under affirmative exercise of its power to restrain and individuals' liberty, it then renders the Plaintiffs' ability to care for himself inadequate, and fails to provide reasonable safety, which has transgressed the substantive limits on state action set by the Fourteenth Amendment of the Equal Protection Clause.

31. Some ASOP-ACPTC Staff minimize assaults and confrontations among the Plaintiffs', and are instead concerned with assaults' on themselves. In fact, the Arizona Legislature adopted Statutes to protect staff from assaults. This particularly applies only to employees of ASOP-ACPTC. Plaintiffs' in ASOP-ACPTC are citizens with the full accompaniment of civil rights, not convicted persons with fewer rights. This demonstrates how civilly committed sex offenders are a new class of, and or race of United States citizens with diminished civil rights by virtue of being deemed a SVP.

32. Plaintiffs' may no longer possess personal computers, laptop computers, and computer software or storage discs of any sort that was once allowed prior to 2010. Nor are Plaintiffs' allowed accesses to copiers, scanners, or any access to the internet. This further draws Plaintiffs' away from society because they could be earning college degrees, working, or just emailing loved ones.

33. Plaintiffs' are no longer allowed to purchase game systems, personal furniture, and other personal property that was once allowed prior to 2010. Plaintiffs' are subjected to having their personal property arbitrarily considered contraband and seized by the ASOP-ACPTC staff without any documentation and knowingly destroyed such property items with refusal to reimburse. Some Plaintiffs' have lost thousands of dollars' worth of property, some having sentimental family values, that mysteriously disappeared after their personal property was removed from their possession.

34. Plaintiffs' are restricted from possessing certain commercially produced media which are determined to be contraband without consultation with the patient charts to determine if such media would be harmful or otherwise counter-therapeutic for the patient to possess. Periodically media mail is subjected to censorship in violation of Plaintiffs' due process rights. Movies or gaming system games not on a pre-approved list must be reviewed by a manager or therapist to determine if they are considered as contraband or not. There is no designated appeal process; and no standard of what is and what is not allowed. The United States District Court, District of Minnesota, Fourth Division had already ruled on this issue in *Kruger b. Goodno.*[4]

[4]Docket No.s': 05-cv-1451 (JMR/FLN); and 05-cv-1504 (JMR/FLN).

35. Plaintiffs' are denied access to their stored property that had previously been allowed and is now considered contraband. Plaintiffs' are denied due process if they challenge the ASOP-ACPTC on property issues. They must provide a written request which results in a manager going to look for an item and coming back stating they could not find the item(s).

36. The State of Arizona has held that the ASOP-ACPTC is not liable for any purposeful damage, destruction or loss of property because it belonged to Plaintiffs' at the ASOP-ACPTC under its tort act.

37. Several of the ASOP-ACPTC staff worked for DOC and though they dress in street clothes their actions and decisions are DOC. An "A-Team" and "B-Team" are assigned to monitor the facility and respond and are authorized to use force against a Patient. Some Staff are disrespectful towards Plaintiffs', making jokes about them. When some staff is questioned by a patient they laugh and state "We will continue to do what we want until we are sued and a court order says different." Or "Go ahead and sue us, where immune, you won't win and nothing will change so get used to it." The arrogant abuses of power come from Defendant Ducey and Crists' directives on how they want the ASOP-ACPTC run. Therefore, there is no "outside entity overseeing the abuses of the ASOP-ACPTC.

- 11 -

38. The jobs ASOP-ACPTC offers are menial labor. Plaintiffs' do not have access to meaningful facility jobs which would cause the patient to be more employable; such as cooking, plumbing, electrical, HVAC, administrative, or any other vocational programs which would afford Plaintiffs' actual and meaningful job skills for re-entry into society.  Further, regardless of a Plaintiffs' previous college degree, or age, he is not permitted to engage in marketable skills offered through college that would benefit and increase his successful reintegration into society. ASOP-ACPTC stops this ability until a patient reaches level 5 so, Plaintiffs' are held at a disadvantage to being successful.  ASOP-ACPTC expects Plaintiffs' to be free from any disagreements with them about their treatment.

39. Most policies and procedures implemented since Defendant Ducey, Crist, Bowen, Payne, and Busby that have been adopted mirrors DOC policies, including  but not limited to Mandatory Pat Searches, Mandatory Metal Detectors, Mandatory Searches of Property and Packages carried in by patient after shopping, There was a time prior to around 2011 this was not so.  Incident Reports and Hearings on Incident Reports without due process, Property Policy, Visiting Policy, Restrictive Movement Policy, and the use of Computers at Library or other such facilities – forbids a patient from being able to research college info, job opportunities, family heritage, scholarships and church or church events. An example to this is when Plaintiff Baron-St. Laurent was approved to attend Gateway Community College and use the computer for his FASA and while doing so he looked up available scholarships' that he might be able to obtain to assist him in paying for his college tuition.  While doing so, one of ACPTSs' surveillance officers, under the supervision of Defendant Gutiérrez, approached plaintiff and asked what plaintiff was doing; plaintiff stated to the surveillance officer that he was looking up scholarship information.  The surveillance officer reported this to plaintiffs' therapist who in turn influenced the treatment team that plaintiff should lose everything which plaintiff did and was dropped to a level one.   The scholarship information was part of plaintiffs' student site but this did not matter he lost everything.                        – 12 –

40. Plaintiffs' handbooks have been modified a couple of times since 2008 and has laid out behavioral violations and punishments for such behaviors. The procedure denies Due Process, Plaintiffs' are not allowed to present evidence, cross examine witnesses, or face their accusers in a formal hearing. Plaintiffs' are not give copies of the incident reports or evidence that is being used against them to impose disciplinary restrictions. Disciplinary reports or behavioral expectations' directly affect progression in treatment and the Plaintiffs' freedom. Disciplinary restrictions can and have at times caused at least a 6 month delay, sometimes longer, progression in treatment. Plaintiffs' at ASOP-ACPTC do not have the right to request a formal hearing panel. The Treatment Team hear the Incident Reports and are made up of Defendants' Bowen, Payne, Miller, Anderson, Sunjo, Galbreath, Koulemou, Gutiérrez; and Therapists Amber, Dylan, Dr. Pereira, Pearson, and Mitchell -- who are not listed defendants at this time. This hearing board is not impartial and the appeal process lacks due process as well. There really isn't any appeal process. Most of the policies and procedures are implemented by Director Payne. The ASOP-ACPTC has a history of backing up Incident Reports written by staff. The informal sanction system is equally flawed. A staff member may write-up an IR and the team issues' consequences without any Due Process being provided whatsoever. The Plaintiffs' is not allowed to refute the evidence and is not provided the evidence that led to the IR. The team issues an Individual Program Plan that expands restrictions and limits the rights of Plaintiffs' which can and have at times caused at least a 6 month delay, sometimes longer, without any Due Process; it can also be extended without due process. This includes being moved from one building floor to another and the taking of a Plaintiffs' job [some Plaintiffs' only receive money from their Therapeutic Work Job that only lasts for two months and then patient has to resubmit an application to be put back on the waiting rotation list for available jobs which, are few and far between]. Plaintiffs' and similarly situated Plaintiffs' ARE NOT CRIMINALS, BUT MENTAL HEALTH PLAINTIFFS', the effect of the IRs' are punishment. Plaintiffs' cannot lawfully receive punishment absent of due process.               – 13 –

41. Defendants have limited the Plaintiffs' Bill of Rights to Plaintiffs' pursuant to current policies by placing all Plaintiffs' on perpetual Administrative Restriction.

42. The ASOP-ACPTC struggles with budgetary restraints' that have been implanted by Defendant Ducey in 2009, and Defendant Ducey has not replaced the monies he took from the ASOP-ACPTC.  Because of budgetary cutbacks there are only five therapists when there used to be seven and case loads are large and stalls plaintiffs; forward movement because certain treatment criterias are delayed to up to six months or longer, at times, just to get an offense cycle reviewed and then it is sent back to Plaintiffs' to modify and then the process restarts.  It can take and has taken up to two years just to get an offense cycle done and in the meantime Plaintiffs' forward progress stalls.   When plaintiffs' questions this practice defendants Payne and Miller state that they can take as much time as they need, since plaintiffs' are committed for life, which they use to justify their actions to purposely delay forward progress and their actions deny our due process rights to liberty.  Of The Patients' who have been released in the past couple months; one lived in Pima County who has issues with the unconstitutionality of the ASOP-ACPTC; the other two – one had to fight for over two years to get his discharge even after living in the community with no issues and the third person was able to hire a private lawyer who was able to obtain his discharge.  Plaintiff Baron-St. Laurent and other plaintiffs' who are whistleblowers and speak out against the unconstitutionality of the ASOP-ACPTC are delayed in their treatment. The ASOP-ACPTC monitors plaintiffs actions and have used anything they do not agree with to stall our ability to ever work our way out of the ASOP-ACPTC.

43. The ASOP-ACPTC and ASH keep telling Plaintiffs' that they do not have the money to reinstitute social activities they cut due to budgetary restraints and cannot refurbish and open up one of the empty buildings because they do not have the money, yet the ASOP-ACPTC and ASH spends thousands of dollars near the end of the fiscal year in purchasing new golf carts, vehicles, office equipment,

computers, barbecues, staff appreciation days, cameras, security devices [that are not needed] while we struggle to stay safe because there is a lack to adequate beds in which defendants' could use to separate the violent Plaintiffs' from non-violent Plaintiffs' [this has resulted in an older patient being murdered by a violent and aggressive patient because the ASOP-ACPTC did not separate the aggressor from the non-aggressor; they claim they did not have a floor they could move him to]. The ASOP-ACPTC consists of four buildings, two of which are closed; the other two consists of three floors to separate some 80 Patients'. This falls back on Defendants Ducey, Crist, Bowen, Payne and CFO John Doe for inadequate funding or misappropriation of funds.

44. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, are responsible for the murder of a patient by another patient. Defendants' knew the murdered patient was in danger of losing his life at the hands of anothers very violent patient because they had been told, observed, and seen camera footage that had pre-warned the defendants that if the two Plaintiffs' were not separated imminent danger or loss of life was present. Defendants did nothing to prevent or stop this murder and have not, as of the date of the filing of this suit, been held accountable for negligence in the murder of this patient. This is also true with the numerous threats and assaults by stronger and bigger Plaintiffs' on Plaintiffs' who are vulnerable or smaller than the assaultive patient.

45. The ASOP-ACPTC is unable to retain staff because of the conditions here. Some believe they are going to work in a treatment environment but do not last and so the ASOP-ACPTC have employed staff with DOC backgrounds to work on the floors and enforce the restrictive policies. Vehicles and staff availability are vital in the ability of Plaintiffs' to get into the community and when neither are available this again hinders a Plaintiffs' successful forward progress of reintegration.

46. Plaintiffs' were allowed personal computers but these were removed for the ASOP-ACPTC in 2009. The ASOP-ACPTC also seized all removable media such as floppy disks and CD-ROMs and have instructed Plaintiffs' that they will have to print their electronic files instead of allowing them to save file on electronic media to send to the courts, attorneys of family etc. . .  This restriction is overly burdensome on the patient and his restricted space.  Plaintiffs'' have been denied and restricted from using or accessing the Internet even though no individual reasonable suspicion has ever been established to warrant the restriction.  The ASOP-ACPTC also already possesses the commercial software necessary to monitor an Internet Server, which is already online for employees of the ASOP-ACPTC, of ASH, Other Civil Plaintiffs' not SVPs, and Plaintiffs' in the Forensic Hospital.

47. Defendant Payne refuses plaintiffs' this access and Defendant Bowen refuses to interfere with her restrictive mentality toward SVPs.  Defendant Payne is only a social worker and not qualified to work with a sex offender population in treatment.  Her thing is punishment.

48. Plaintiffs allege that ASOP-ACPTC are depriving all Plaintiffs' of reasonable and meaningful telephone access. Defendant Bowen has permitted Defendant Payne to restrict our phone access by making us get permission before we can call anyone; to include the courts, cops, attorneys, veterans' administration and family.  Calls must be approved, on a ten list, and dialed by program staff.  If staff decides they do not want to take the time to make the call on behalf of Plaintiffs', they are told to come back at a later time. This violates our due process rights and is unconstitutional.

49. Many restrictions imposed by the ASOP-ACPTC have risen to a level of abuse by the standards of professional judgment, decision or conduct.

- 16 -

50. Nearly every policy and procedure implemented since 2010 goes far beyond the scope of *Professional Judgment* and is now for staffs' convenience. The real mission of the ASOP-ACPTC now is institutionalization, preventative detention and punishment. There is no rehabilitative purpose. None of these restrictions were necessary in the prior years to maintain control at the facility. The restrictions and changes have actually created a hostile environment that encourages a sense of hopelessness, powerlessness, and fear.

51. The ASOP-ACPTC *has a history of retaliating against, and holding back Plaintiffs' from progressing in treatment for exercising their rights to grievances and lawsuits.*

52. Many Plaintiffs' in the ASOP-ACPTC-ACPTC have no legal representation and have been programmed and are encouraged by the ASOP-ACPTC-ACPTC *to not challenge the treatment program.*

53. In 2006, the 8th Circuit Court of Appeals ruled that "Neither the Supreme Court nor this court has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous person under the Matthews balancing test.

*"Since a person has been civilly committed as a dangerous person, his liberty interests are considerably less than held by members of a free society.[5] As compared to a prison inmate, however, a committee was entitled to more considerate treatment and conditions of confinement. [6] Civilly committed sex offenders retain certain rights. In particular, they have a right to receive treatment or other training that will give them an opportunity to regain some or all of their rights to liberty[6]." (Emphasis added)*

54. In a report authored by the Office of the Legislative Auditor, it states in part: "The standard for reviewing whether treatment is adequate, is whether treatment exercise professionals' judgment in running the treatment program.   While this may be a low bar for judging treatment programs, a federal court found that the program administrators in the state of Washington failed to exercise their professional judgment in running their civil commitment program, resulting in a 13 year injunction while the program corrected the treatment program.   In that case, the court found that the treatment program had so departed from minimal professional standards that the treatment professionals must not have based their treatment decisions on their professional judgment.   Some of the conditions which led to the injunction included: inadequate staffing, inadequate training of staff regarding the clinical mission of the facility, the lack of individualized treatment, the absence of arrangements for Plaintiffs' to transition to being released, inadequate provisions to allow Plaintiffs' families to participate in treatment, and a punitive treatment environment[7]. As a result, it is important that any civil commitment program for sex offenders offer adequate treatment to those in the program.   A court could consider failure to release offenders from civil commitment as evidence that inadequate treatment is being provided or that the purpose of the program is punitive rather than rehabilitate.   It should be noted, however, that participation in treatment is voluntary.   Plaintiffs' at a civil commitment facility may decline treatment, but a facility must at least offer each resident the opportunity to participate in treatment.

[5] See Wilkenson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2395 – 96, 162 L.Ed.2d 174 (2005);
    Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972)
[6] See Youngberg v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452, 73 L.Ed. 2d 428 (1982);
    Senty Haugen v. Goodno, 426 F.2d 876 (2006 9th Cir.)
    Hydrick v. Hunter, 500 F,3d 978 (9th Cir. 2007)
[7] See Turay v. Seling, et al, 108 F.Supp.2d 1148 (W.D. Wash 2000)

55. The ASOP–ACPTC does not provide constitutionally adequate treatment. Currently the ASOP–ACPTC changes the programming approximately every two years and currently once a year as they try to find the right fit. In doing so the ASOP–ACPTC requires Plaintiffs' to retake, over and over again, same material with some tweaking and so Plaintiffs' must  literally start basic treatment groups over again, where Plaintiffs' remain at the ASOP–ACPTC longer than they need to be.  This practice violates Plaintiffs' rights to due process and their constitutional right to adequate treatment and being released from commitment.   There are plaintiffs herein who have been in the ASOP–ACPTC treatment for over 20 years.

56. Nearly all of the treatment is designed to deal with the conditions prior to offending and of confinement and how the Plaintiffs' are adapting to institutionalization rather than rehabilitation for committing illegal sexual acts. Nearly all treatment groups do not involve sex offender specific treatment, which is the purpose.   Instead therapy focuses largely on the criminal or convict attitudes that are associated with long-term institutionalization and/or the current prison confinement, not sexual offending. Plaintiffs have gone through sex offender treatment groups over and over and the ASOP-ACPTC uses outdated facts to justify that plaintiffs still meet the SVP criteria when in fact they are unable to prove beyond a reasonable doubt that plaintiffs' still meet the criterias for still being committed but are now being warehoused. *Wyatt v. Stickney*[8] demonstrates the minimum constitutional standard for confinement in treatment centers.   The U.S. Supreme Court in Youngberg[9] referred to Wyatt v. Stickney as a controlling case regarding constitutional standards for civil commitment.   The *Eighth Circuit* has adopted and recognized these rights[10].   In Wyatt, the court stated: *"The Plaintiffs' for the most part, were involuntarily committed through non-criminal procedures and without the constitutional protections that are afforded Defendants in criminal proceedings.   When Plaintiffs' are so committed for treatment purposes they unquestionable have a constitutional right to receive such individual treatment as well as give each of them a realistic opportunity to be cured or to improve his or her mental condition."*[11] Adequate and effective treatment is constitutionally required.   *"Treatment efforts must be directed to that aspect of his behavior which caused him to be classified as dangerous so that he has a reasonable opportunity to be eventually discharged from Maximum security confinement.   To hold otherwise would certainly 'transform the hospital into a penitentiary where one could be held indefinitely for no convicted offense.'"*[12] The purpose of involuntary hospitalization for treatment purposes is treatment.

[8] Wyatt v. Stickney, 334 F.Supp. 1341 (M.D. Ala. 1971);  344 F.Supp. 373, (M.D. Ala. 1971)
[9] Youngberg v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452, 73 L.Ed 2d 428 (1982)
[10] See Coley v. Clinton, 635 F.2d 1364, 1375 (8th Cir. 1980)
[11] Id Wyatt.  [12] Eckerhart v. Hensley, 475 F.Supp. 908, 915 (MI D. 1979); citing Ragsdale v. Overholser, 108 U.S. App. D.C. 308, 315; 281 F.2d 950 (1960).     - 19 -

57. The ASOP-ACPTC, unlike the treatment programs offered in Wyatt, does not offer a realistic opportunity to be improve Plaintiffs' condition or be released.  In the ASOP-ACPTC, the Patient is held in penitentiary conditions that violate his Constitutional Rights[13].  The treatment program offered is a complete failure.  In fact, in its 20 + year history more men who had not yet been committed or fit the criteria were ordered released than Plaintiffs' were discharged.  The ASOP-ACPTC discharges the minimal amount, just enough, so they can claim that Plaintiffs' are being discharged and some of those came back into the program because of technicalities or they had committed a new crime or violated their probation.

58. In evaluating the minimal Constitutional professional standards of care as applied in Wyatt, for adequate treatment, the ASOP-ACPTC comes up short.   The following are but a few examples of the Wyatt Standards:

59. *IV.      HUMANE   PHYSICAL   and   PSYCHOLOGICAL   ENVIRONMENT   15.* Résidents' shall have a right to dignity, privacy and humane care.  [In the ASOP-ACPTC can view the Patient at the Urinal or while getting changed in his room by opening a window or flap as they do census.  These census checks are done at random intervals every 30 minutes.  The right to dignity is taken away by the policies that allow staff to intrusively pat search Plaintiffs' by placing their hands inside Plaintiffs' clothing and rubbing up against Plaintiffs' penis, sacks, butt cheeks, or grabbing butt cheeks in the guise of searching back pockets.

60. *II. ADEQUATE HABILITATION OF PLAINTIFFS', 3 c.*
Plaintiffs' shall have a right to the least restrictive conditions necessary to achieve the purposes of habilitation.  To this end, the institution shall make every attempt to move residents from more to less structured living; [There are no least restrictive conditions in the ASOP-ACPTC.  It is designed to mirror maximum-security prison with walls, fences, rows and rows of razor wire, cameras and GPS Monitors attached to Plaintiffs' ankles].

[13] Id.

61. *IV.    HUMANE  PHYSICAL  and  PSYCHOLOGICAL  ENVIRONMENT    19.*
Plaintiffs' shall have the same rights to telephone communication as Plaintiffs' at
Public Hospitals, except to the extent that qualified Mental Health Professionals
responsible for formulation of a particular Plaintiffs' treatment plan *writes an order
imposing special restrictions.* The written order *must be renewed* after each
periodic review of the treatment plan if any restrictions are to be continued.
Plaintiffs' shall have an unrestricted right to visitation with attorneys, with private
physicians and other health professionals. [In the ASOP–ACPTC, Plaintiffs' phone
conditions are very restrictive and are much less desirable than others committed
under The Act.  The ASOP–ACPTC *does not* apply restrictions to individual
Plaintiffs', the restrictive phone policies were applied to every ASOP–ACPTC
Patient in the facility without any reviews or identification in the individual
treatment plans.  Plaintiffs' phones have no dialing capabilities; such capabilities
must be done by program staff from their enclosed office.

62. *TRAINING TASKS and LABOR,*    *(1) Currently the  ASOP–ACPTC  does  not
permit or util*ize Plaintiffs' to perform vocational training tasks.  If they did the
ASOP–ACPTC would be required to compensate each patient in accordance with
the minimum wage laws of the Fair Labor Standards Act.  29 U.S.C. 206 as
amended, 1966.  Currently the ASOP–ACPTC has jobs, like cleaning bathrooms,
common areas of each floor, landscaping, cafeteria clean up [only the dining area
of the cafeteria], and in the REALife rehab recreation area.  Plaintiffs' work for an
8 week rotation cycle and then are placed on the bottom of the waiting list.  No
Patient receives minimum wage.

63. *PERSONAL HOUSEKEEPING: Plaintiffs' may be required to perform tasks of a
per*sonal housekeeping nature such as the making of one's own bed.  Payment to
residents pursuant to this paragraph shall not be applied to the costs of
institutionalization.    Staffing shall be sufficient so that the *institution is not
dependent upon the use of residents or volunteers for the care, maintenance or*

*habilitation of other Plaintiffs' or for income-producing services.*  The institution shall formulate a written policy to protect the Plaintiffs' from exploitation when they are engaged in productive work.  Plaintiffs' are required to clean up the feces and biohazard waste and materials of patients who are unable to fully care for themselves.

64. *PHYSICAL FACILITIES 38.*   A patient has a right to a humane physical environment within the institutional facilities.  These facilities shall be designed to make a positive contribution to the efficient attainment of the habilitation goals of the institution.   [At the ASOP-ACPTC, the psychological environment is one of hopelessness and fear.  The mere fact that the Plaintiffs' who had been released have died or have been in the ASOP-ACPTC for over 10 years, the fact that the facility implements DOC policies and procedures that mirror their phone, property, visitation, searches, etc., are designed to  continually punish and remind Plaintiffs' that they are SVP and still inmates doing time. The fact that security and clinical staff are directed to punish as much as possible, make the environment inhumane and extremely stressful. The physical environment of the ASOP-ACPTC mirrors a maximum security prison with walls, fencing, dead man zone, rolls and rolls of razor wire, surveillance cameras that cover every aspect of plaintiffs' movements except inside the bathroom area.

65. There is clear indication that the ASOP-ACPTC violates the conditions of confinement and lack of adequate treatment are present.   A question of constitutionality is present.  It is the courts' jurisdiction to determine whether or not, the ASOP-ACPTC is so punitive that if offends Due Process.

66. As a result of the Defendants above-described actions, Plaintiffs' have suffered great harm and damages including but not limited to: pain and suffering, emotional stress and distress, embarrassment, humiliation, past and future medical expenses, lost earnings in an amount to be determined.

# VII   STATEMENT OF CLAIMS

67. On or about the fall of 2014 the Arizona State Hospital went through an administrative change when ABC 15 news conducted an investigation into the unconstitutional practices that program staff and supervisors were allowing on Plaintiffs' that were deemed abusive.  The result was that the Director of DHS, ASH CEO, and other staff, including the director of ASOP-ACPTC were terminated or given a chance to resign. A new Administration was appointed by Defendant Ducey who appointed Cara Crist as the new DHS Director, Aaron Bowen as the new CEO, Shanda Payne as Director of the ASOP-ACPTC.  At the time Dr. Fulks and then Dr. Tanita had become our Clinical Directors but, we speculate due to administrative differences in the direction the ACPTC program should go they left within 2 years and 1 year, respectively.  After Dr. Tanita left Defendant Sheridan Miller became Clinical Director of the ASOP-ACPTC.  Defendant Payne has no actual expertise to operate or manage a treatment facility for sex offenders.  Prior to her appointment as director of ASOP-ACPTC defendant Payne was working as a social worker in another part of the ASH grounds.

68. Since the start of the ASOP-ACPTC, many of the people they hire have worked in The Arizona Department of Corrections; Therapist Dr. Pereira worked with sex offenders in prison for about 5 + years.

69. Since Defendant Ducey, Crist, Bowen, Payne, and Miller have taken over the roles of making determinations on how the ASOP-ACPTC should be operated, they have restricted most of the civil rights' Plaintiffs' [Plaintiffs'] previously enjoyed and changed to the standards of a maximum security prison facility.  Examples would include the following:  Unjustified Intrusion of Personal Security & Privacy, Lack of Treatment, Plaintiffs' being punished and abused through threats [especially whistle blowers]; restricted visiting; restricted property; monitored calls; restricted personal physical movement; and punished without due process of law.

70. Defendants continue to violate Plaintiffs' Fourteenth Amendment Rights through violations' of the First, & Fourth Amendments of the Bill of Rights as enumerated in the Constitution of the United States of America by purposely withholding funds and enacted policies that impose hardships Plaintiffs' Rights under theses Amend.

71. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou have violated Plaintiffs' Due Process Rights by implementing policies and rules that mirror the Arizona Department of Corrections, which are designed for the punishment of offenders convicted of crimes. These are a substantial departure from the accepted standards of professional judgment.

72. Defendants Ducey, Crist, Bowen, Payne, Miller, have violated Plaintiffs' right to receive proper care and treatment, best adapted to rendering further supervision unnecessary.   In addition, Defendants' have failed to give each committed Patient the right to an individualized behavioral specific sex offender treatment plan, because the plans as compared are similarly written, the goals are the same.

73. Defendants Ducey, Crist, Bowen, Payne, Miller, have restricted Plaintiffs' Right to acceptable treatment practices and have instead subjected them to be experimented on through an ineffective treatment process with ineffective, undertrained therapists to thwart the release of committed Plaintiffs'.

74. Defendants Ducey, Crist, Bowen, Payne, Miller, Due to the above, Defendants violate Plaintiffs' Fourteenth Amendment Rights through the First, and Fourth Amendments.

75. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, have violated some of Plaintiffs' right to correspondence through email, uncensored mail, internet access, and uncontrolled and monitored phone calls.

76. Defendants Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, & Amouzouvi have violated some of Plaintiffs' Right to uninterrupted sleep.

77. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, have restricted some of Plaintiffs' freedom of right to possess personal property for which they purchase.

78.  Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, are responsible for the murder of a patient and assaults on other Plaintiffs'.

79.  The Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment within the bounds of professional Judgment.  Moreover, due process requires that the treatment, conditions, and duration of confinement for civilly committed persons bear some reasonable relation to the purpose for which person is committed.  The ASOP–ACPTC fails the above miserable.

80.  Defendants' Ducey, Crist, Bowen, Payne, Miller, have further delayed plaintiffs' advancement in treatment when they permit Defendant Miller to take from 3 to 6 months just to review Plaintiffs' offense cycle and RPP plans.  In order to advance in the ASOP–ACPTC Plaintiffs' must complete an offense cycle that must meet the high standard of Millers expectations.  Once Plaintiffs' have completed their offense cycle draft, it goes to his therapist who provides feedback and changes they would like to see, then it goes to Millers' desk where the offense cycle could sit for 3 to 6 months before she even looks at it.  Once Miller reviews the offense cycle and makes her comments, it goes back to the Patient who now makes changes based on the comments that were provided to him.  Then, the process starts all over again.  In essence some Plaintiffs' have worked for up to two years to get their offense cycles up to the high standard Miller has set in place but, have not met her strict demands.

81.  Defendants' Ducey, Crist, Bowen, Payne, Miller, has allowed Morrison Food Service to continually shorten food portions as they are rationed out a  lesser degree then what menu states and/or do not deliver what is on the menu.

## EXCESSIVE RESTRICTIION:

82. Plaintiffs' allege that conditions of confinement at the ASOP-ACPTC under Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, are:

    a) The conditions of confinement are overly restrictive, and

    b) The sex offender treatment is very little to non-existent sex offender specific treatment.

Plaintiffs' point out the ASOP-ACPTC physical structure and layout are that of a penitentiary environment that is counter therapeutic and inappropriate for the treatment-based nature of Plaintiffs' Civil Confinement. Plaintiffs' also allege that the ASOP-ACPTC defendants' have imposed excessive restrictions on personal movement, conduct inappropriate room and personal searches, in violation of accepted professional standards of judgment.

## ASOP-ACPTC PHYSICAL STRUCTURE AND LAYOUT:

83. The physical – structure of the ASOP-ACPTC is similar to that of a maximum security, prison facility, rather than a treatment facility or traditional mental health facility. Everything is locked down, no free movement. The conditions are, but not limited to: Numerous guards and observation posts, a central security system, continually locked-doors, small prison like rooms, arbitrary cell searches, invasive body searches and significant restrictions on physical movement. Since some of the staff working at ASOP-ACPTC are former DOC they have a history of not caring for Plaintiffs', rights or well – being in normal day situation. Staff would much rather sit in the office doing as little work a possible so they can be on their phones or computers [not therapeutic related] and become annoyed when Plaintiffs' ask for their help, like making a phone call.

## RESTRICTIONS ON MOVEMENT:

84. The restrictions on movement at the ASOP–ACPTC ARE IDENTICAL TO A MAXIMUM SECURITY CORECTIONAL FACILITY.  Nearly all of the restrictive practices are identical to the DOC since 2010.

85. When Plaintiffs' leave from and return to the respected floors they live on, they are intrusively and mandatorily searched even though they are never out of staffs sight, No Heightened Scrutiny applies to Equal Protection claims based on violations of civilly confined sexual offenders' liberty interest in free movement. Plaintiffs; are exposed to many locked doors, gates, fences, and are continuously on camera and eye sight of staff.

86. Nearly all Plaintiffs' have been incarcerated for many years in prison, the requirement compelling staff to act like DOC produces unhealthy and counterproductive therapeutic environment that is not conducive to a treatment setting.  Plaintiffs' are civilly committed after a judge specifically ruled that the many years in prison did not help Plaintiffs'. Staff could accomplish their duties that do not exasperate Plaintiffs' reality to their status of being less than other humans/citizens.

## VIOLATIONS OF FIRST AMENDMENT

87. An Amendment to the constitution that guarantees freedom of religion, freedom of speech, and freedom of the press, as well as freedom of association (the right "peacefully to assemble") and the right to petition the government for redress of grievances. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, HAVE DENIED Plaintiffs' freedom of communication such as:

   a) Use of the internet;

   b) Unmonitored & unrestricted telephones;

   c) Uncensored mail and

   d) Other available technologies.

88. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, deny Plaintiffs' Internet access arbitrarily whether or not such restriction is actually necessary for the safety and security of the institution and/or public on an individual basis.

89. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, deny Plaintiffs' free access to phone use. Every phone call must be pre-approved [even when calling a court, judge, attorney, before a call can be made.

90. Plaintiffs' do not have the ability to make their own calls or, call business, churches, and stores, without prior approval. Plaintiffs' cannot order items through the phone and use of a debit card.

## VIOLATIONS OF FOURTH AMENDMENT

91. An Amendment to the Constitution prohibiting searches and seizures of property without search warrants and issued only upon Probable Cause. Properties in Plaintiffs' rooms are theirs and subject to freedom of warrantless searches and must show Plaintiffs' due process of the law.

92. There must be reasonable suspicion - specific, objective information, rational inferences reasonably drawn from those facts based on experience, and individualized suspicion (i.e., suspicion regarding the person to whom the request is made) that a threat to facility safety and security exists. Reasonable suspicion also requires the contraband, that is the subject of the search, is believed to be concealed on the person or persons, in the persons' vehicle, home, or in the area to be searched.

93. Pat Search - an inspection of a person, using the hands, and may require the removal of shoes for inspection. Which is used without any reason other than to violate a Plaintiffs' privacy without first establishing a reasonable suspicion that the Patient possesses any contraband?

94. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, violate Plaintiffs' Civil Rights when they conduct cell searches *(shakedowns)* arbitrarily without any reasonable suspicion of contraband. These cell-searches are called random room searches, but, they are not. Defendants' claim that this occurs by a computer randomly selecting room numbers to be searched.

95. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, violate the Plaintiffs' civil rights when property is seized as contraband even though the property is currently allowed, or has been previously allowed into the facility. Property is also seized from Plaintiffs' only to compel Plaintiffs' to provide proof that the property seized belongs to the Patient it was seized from. This is hard to do when Plaintiffs' have property for several years and no longer have any kind of paper work proving the item is his.

96. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, violate the Plaintiffs' Civil Rights when Patient property is mishandled. Patient property is destroyed or retained at the whim of whatever property staff the Patient happen to deal with. Many times, personal property is destroyed in the guise of an accident.

97. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, violate Plaintiffs' Civil Rights when property is seized and is then comes up mystically missing or placed into a storage area that Plaintiffs' have no access to thus we are unable to verify whether the property item(s) is stored there.

98. Defendants' Ducey, Crist, Bowen, Bugby, Payne, Miller, violate Plaintiffs' Civil Rights when they compel Plaintiffs' to submit to arbitrary searches with *metal-detecting wands* and hands over their bodies without Defendants first establishing a reasonable suspicion; or otherwise without Defendants' conducting an *individualized risk assessment or Plaintiffs' history* to warrant the invasive search.

## ROOM SEARCHES:

99. Plaintiffs' rooms are arbitrarily searched for contraband.  The procedure lacks the necessary standards of professional judgment for a treatment facility to justify the personal invasion of privacy.  Plaintiffs' allege the property being taken is not a risk to institution security; it is to harass, intimidate, and deprive Plaintiffs' of their personal property.

## PAT SEARCHES:

100. Plaintiffs' are subjected to mandatory hand searches by male staff regardless of personal reasonable suspicion.  Plaintiffs' are also subjected to an arbitrary pat search before and after each visit even though Plaintiffs' are under constant video and personal surveillance by the ASOP–ACPTC staff; when Plaintiffs' enter the visitation area, going to or coming from any outside activity, whether medical or personal.

## VII   SUMMARY OF CLAIMS

101. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, have violated and subjected Plaintiffs'' to arbitrary and severe restraints and restrictions to their living conditions and denial of basic needs of life that constitutes a severe restriction of liberty; have also therefore, deprived Plaintiffs' of life, liberty and property without due process of law. Defendants' are required by law to provide Procedural and Substantive Due Process.  But have failed to provide due process.

102. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, have deprived Plaintiffs' of their right constitutionally adequate treatment, thereby violating their constitutional right to due process.

103. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, have deprived Plaintiffs' their due process by denying Plaintiffs' treatment that can secure a release into the community in a reasonable time period.

104. Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, have subjected Plaintiffs' to deprivations relating to the lack of due process in disciplinary proceedings.  Defendants' are required by law to provide procedural and substantive due process, but have failed to provide due process.

105. Arizona State Statutes, Rules and Policies have set forth specific and mandatory right of Plaintiffs' sufficient to create a Constitutionally Protected Interest.

106. As a result of Defendants Ducey, Crist, Bowen, Payne, Miller, Anderson, Galbreath, Sunjo, and Koulemou, violations of Plaintiffs' due process rights, we as a  class have suffered the damages described in paragraphs 1 through 100 of this Complaint, and seek Declaratory and Injunctive Relief necessary to end said violations.

## IX   CAUSE OF ACTION

107. Plaintiffs', through the vehicle of Title 42 U.S.C. § 1983, any other jurisdiction as mentioned in Paragraph 3 through 5 above and through any other laws and/or rules this Court deems fair and appropriate, charges that Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Amouzouvi, captioned above in section V. above, did commit acts under color of state law, depriving Plaintiffs' of their unalienable right, privileges, and immunities secured by the Constitution and laws of the United States of America, in violation of the First & Fourth Amendments through Fourteenth Amendment protection, in both their official and personal capacities by committing the following:

– 31 –

## COUNT I – VIOLATION OF THE FOURTEENTH AMENDMENT PURSUANT TO THE UNITED STATES CONSTITUTION.

108. Plaintiffs hereby reallege and incorporate by reference, all the facts and allegations contained in Paragraphs 1 through 102 of this complaint. Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Amouzouvi, through the above described actions, did engage in violations pursuant to the Fourteenth Amendment of the United States Constitution; Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of Life, Liberty, or Property, without Due Process of Law; nor deny to any person within its jurisdiction the equal protection of the laws.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT PURSUANT TO THE UNITED STATES CONSTITUTION.

109. Plaintiffs hereby reallege and incorporate by reference, all the facts and allegations contained in Paragraphs 1 through 102 of this complaint. Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Amouzouvi, through the above described actions, did engage in violations pursuant to the First Amendment of the United States Constitution; Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;  or abridging the freedom of speech, or of the press; or the right of the people to peaceably to assemble and to petition the Government for a redress of grievances'.

## COUNT III – VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO THE UNITED STATES CONSTITUTION.

110. Plaintiffs hereby reallege and incorporate by reference, all the facts and allegations contained in Paragraphs 1 through 102 of this complaint. Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Leon, through the above described actions, did engage in violations pursuant to the Fourth Amendment of the United State Constitution; The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants will issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

111. Plaintiff, Rene Baron-St. Laurent Sr., asserts that **Shanda Payne**, **Director** of ACPTC, **Manager(s) Kevin Galbreath, Shawn Anderson, and Pascal Koulemou.** Defendant Payne was involved in a previous issue and current issue of seizure of plaintiff's personal property.  Defendant Payne knowingly in her professional and official, and unofficial capacity as director of the compound plaintiff is living at did tell former manager Ismael Espiricueta to only allow certain items of property when he first took all of my belongings.  Currently, Director Payne knowingly in her professional and official, and unofficial capacity as director of the compound plaintiff is living at did tell defendant(s) Manager(s) Kevin Galbreath, Shawn Anderson,  and Pascal Koulemou to take all of his property and place it into storage. This would include all of his clothing, legal, bedding, appliances, hygiene, and small portable clothes closet, plastic shelves, shoes, books, treatment work and especially his legal documents.

Please see enclosed correspondence in support of my claim against Director Payne, Managers Galbreath, Anderson, and Koulemou.

– 33 –

Plaintiff, Rene Baron-St. Laurent Sr., has endured unnecessary abuse by the administrative heads of where he is living at and even though he has been told by defendants that the property he has, has been allowed and now under their new clinical / administrative team these items are no longer permitted. Defendant Payne continuously changes the policies so month by month the way managers and other clinical staff conduct themselves and the rules change which includes property items we can have. I live in a 7' by 6 ½' single bed room/cell. In my room is a dresser and a metal bed that the state provides. I was issued a pillow, sheets, blanket, pillow case, gray sweats, towel, wash cloth and underwear; this was ten years ago. Everything in my room is my own personal property to include the items I was given.

Defendant Galbreath went to the extreme of accusing plaintiff of placing state property, like mop heads, into my stored property and when plaintiff asked this defendant to prove this to him, plaintiff was told that defendant wasn't going to debate the issue with him yet, he made the accusation and plaintiff only ask to see the evidence which never happened.

Plaintiffs' have filed this litigation, because of the ongoing years of abuse by state/government officials that each year continues to escalate / worsen especially when it comes to violating our protected rights. Plaintiffs' is trying to stop these officials from once again taking everything he has without due cause or due process of law and their justification is that I am a ward of the state, duly committed by a jury trial to be committed to the Arizona State Hospital which he is.

**Under Arizona Administrative Code R9 – 10 – 1309, under procedure A4(a);**

**"All residents at ACPTC have the right to receive treatment that supports and respect's the clients Characteristics, Strengths' and Abilities, while enhancing pre-social decision making and choices."**

1. Treatment Absorption
2. Pro-social Skills
3. Community Integration

– 34 –

# IX   CAUSE OF ACTION

112.   WHEREFORE Plaintiffs' PRAY for Judgment in our favor as follows:

113.   A jury trial on all issues triable by jury.

114.   Granting Declaratory Judgment in favor of Plaintiffs' by declaring Defendants' violations of Plaintiffs' rights.

115.   Granting Injunctive Relief prohibiting Defendants from continuing to violate Plaintiffs' rights, requiring Defendants; to provide Plaintiffs' with the standards required to meet all medical and mental health treatment, prohibiting Defendants' from reading or interfering with Plaintiffs' correspondence. Prohibiting Defendants' from holding back Plaintiffs' Progression through Treatment; and/or hold back Plaintiffs' because they voice their grievances against the unconstitutionality of the ASOP-ACPTC.

116.   Awarding Judgment in Favor of Plaintiffs'' against Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Amouzouvi, and each of them jointly and serially in an amount in excess of $ 1, 750,000.00 as and for Compensatory Damages.

117.   Awarding Judgment in Favor of Plaintiffs'' against Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Amouzouvi, and each of them jointly and serially in an amount in excess of $ 1, 750,000.00 as and for Punitive Damages.

118. Hold Defendants Ducey, Crist, Bowen, Bugby, Payne, Miller, Anderson, Galbreath, Sunjo, Koulemou, and Amouzouvi jointly and severally liable for Plaintiffs' Judgment.

119. Awarding Plaintiffs' all costs and disbursements herein, and prejudgment interest.

120. Awarding Plaintiffs' reasonable attorney fees pursuant to 42 U.S.C. § 1988.

121. Ordering that any monies awarded to Plaintiffs' be exempt from collection by the State of Arizona in connection with billing for cost of care.

122. Such other and further relief as the Court may deem just and proper.

Executed at ASOP–ACPTC, Phoenix, Arizona on.

X _Rene Baron-St Laurent_

Ronald Rene' Baron-St. Laurent Sr.
Document Preparer/Plaintiff

CASE NO.

# <u>Certificate of Mailing</u>

I certify that I have mailed the original and two copings of the enclosed pleadings on this Monday the ~~5~~<sup>th</sup> day of ~~August~~ 2019, to:

[handwritten: 17]     [handwritten: October]

     Clerk, The United States District Court
     SANDRA DAY O'CONNOR U.S. COURTHOUSE, SUITE 130
     401   West   Jefferson   Street, SPC-1
     Phoenix, Arizona    85003 – 2118

## VERIFICATION

I have read the foregoing complaint and herby verify that the matters al-
leged therein are true, except as to matters alleged on information and belief,
and, as to those, I believe them to be true.  I certify under penalty of perjury that
the foregoing is true and correct.

_____            _____
Ronald Rene' Baron–St. Laurent Sr.                         Edward Brown

_____            _____
              Norris Gray                                              Dushone Nickolich

_____            _____
              Lonnie Bryant                                          Patrick Troutman

_____            _____
              Tim Robinson                                          Gordon Emond

_____            _____
              Carl Snodgrass                                        Rick Kirkman

_____            _____
              Ted Warner                                              Trinidad Martinez

_____            _____
              Todd Williams                                          Bo Allen